53 CCPA

**Application of Edwin L. SUKMAN.**

United States Court of Customs and Patent Appeals.

Nov. 4, 1965.

———◆———

William C. Long, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Irving R. Pellman, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals which affirmed the examiner's rejection of claims 18, 19 and 21–23 in appellant's patent application [1] for "Chemical Process."

The nature of the appealed subject matter is reflected in claim 22:

22. The process for the production of cyclohexanone which comprises contacting a mixture of 40 to 99% cyclohexanol, 0 to 50% cyclohexanone and 1 to 10% of other product formed during cyclohexane oxidation with zinc oxide catalyst to dehydrogenate the cyclohexanol to cyclohexanone.

By way of background, the record establishes that it is well known to dehydrogenate secondary alcohols to the corresponding ketones by passing the alcohol at elevated temperatures over substances acting as dehydrogenation catalysts. Among the catalysts used for that purpose have been metals such as copper and brass, as well as certain metallic oxides such as zinc oxide. Although cyclohexanol, the particular secondary alcohol of

---

1. Serial No. 859,155, filed December 14, 1959.

interest here, has been converted to cyclohexanone employing such processes, the cyclohexanol itself, insofar as the record shows, has always been derived from hydrogenation of phenol.

More recently, cyclohexanol has been prepared by another process involving vapor phase oxidation of cyclohexane.[2] As seen from the above claim, appellant employs cyclohexane-derived cyclohexanol in his zinc oxide-catalyzed process for preparation of cyclohexanone.

The examiner rejected the claims as unpatentable over each of the Lazier[3] and Mottern[4] patents, both of which disclose the dehydrogenation of secondary alcohols utilizing a zinc oxide composition as a dehydrogenation catalyst. Lazier states that his process is useful "in the treatment of cyclic alcohols, such as cyclohexanol," and that "inert ingredients such as hydrocarbons may be present in the alcohol dehydrogenated and thus form a part of the resulting solvent mixture." In an example, Lazier describes the cyclohexanol used in his process as derived from "the catalytic hydrogenation of phenol." While the examiner recognized that the references were silent as to the use of cyclohexane-derived cyclohexanol as a feedstock in the disclosed dehydrogenation processes, it was his position that cyclohexanol in such a feedstock would be expected to undergo dehydrogenation by a zinc oxide catalyst to cyclohexanone, notwithstanding the presence of certain other cyclohexane oxidation products as impurities. The board agreed, stating:

> * * * we believe that it would be obvious to a person of ordinary skill in this art (35 U.S.C. 103) to use the zinc oxide catalysts of the references in dehydrogenating cyclohexanol derived from the oxidation of cyclohexane. * * *

Appellant contends the board has tacitly assumed that the processes of the claims and of the references were both being applied to equivalent feedstocks, and that it also has erroneously assumed that a showing that one feedstock may be treated with a particular catalyst is tantamount to a showing that the use of the other would be obvious. He asserts that the phenol-derived cyclohexanol treated in the prior art and the cyclohexane-derived cyclohexanol treated in his process are not equivalent, since the compositions do not function in the same manner.

To illustrate his point, appellant directs attention to certain experiments set forth in his specification which show that red brass, asserted to be the catalyst employed commercially for dehydrogenation of phenol-derived cyclohexanol to cyclohexanone, rapidly loses its activity and yields poor conversion when contacted with a cyclohexane-derived cyclohexanol feedstock containing cyclohexanol, cyclohexanone, and various cyclohexane oxidation product impurities. On the other hand, the activity of red brass is not impaired when pure cyclohexanol is subjected to dehydrogenation in a process said to be "exemplary of the commercial process used for producing cyclohexanone." A comparison of two examples, one employing zinc oxide catalyst with the impure cyclohexane-derived cyclohexanol, the other employing red brass catalyst with the pure phenol-derived cyclohexanol, shows comparable over-all yields of cyclohexanone achieved in the two processes.

■ The board rejected appellant's argument, stating:

> We agree with the Examiner that the arguments based upon the effectiveness of red brass are of little significance, inasmuch as the rejec-

2. Appellant has stated in the record that processes involving "oxidation of cyclohexane to produce reaction product mixtures largely consisting of cyclohexanol and cyclohexanone * * * are known in the art and have been so known for a considerable time."

3. U. S. Patent No. 1,895,516, issued January 31, 1933.

4. U. S. Patent No. 2,586,694, issued February 19, 1952.

tion is not based upon a combination of references * * * [requiring] the substitution of zinc oxide for red brass. The supposition that the course of investigation would first proceed with red brass and that, finding this catalyst ineffective, one would be led away from zinc oxide, is based upon "the manner in which the invention was made." As indicated by the last sentence of 35 U. S.C. 103, this is not a factor in determining patentability. * * *

The board's reference to the last sentence of 35 U.S.C. § 103, which provides that "Patentability shall not be *negatived* by the manner in which the invention was made" [Emphasis supplied], does not seem appropriate here. Appellant's argument is in fact directed to what prior knowledge in the art would lead a skilled person to consider in attempting to solve the problem appellant faced. No evaluation of an invention can ignore the known technology of record and the direction indicated thereby.

■ However, we cannot agree with appellant that one skilled in this art, upon review of the known technology as represented in this record, would be dissuaded from the application of a zinc oxide catalyst to the dehydrogenation of cyclohexane-derived cyclohexanol, or that the prior art strongly suggests moving in the direction of the brass catalyst in preference to zinc oxide. The prior art does not appear unaware of the fact that red brass catalysts deactivate in the presence of feedstock impurities, or that zinc oxide catalysts are effective in the presence of feedstock impurities. Indeed, Lazier states:

* * * Considerable attention has been given to the development of methods based upon the use of copper as a catalyst in these reactions, but numerous obstacles have thus far prevented the development of a completely successful process.

Some of these difficulties may be briefly indicated as follows: * * (2) Copper, while the most desirable catalyst from the standpoint of initial activity and freedom from a tendency to induce side reactions, *quickly deteriorates as a result of sintering or of poisoning by impurities present in the gaseous mixture passed over the catalyst.* (3) Oxide catalysts, *although capable of retaining their activity for long periods,* are ordinarily relatively inactive and therefore require the use of much higher temperatures to bring about the same results obtained with copper catalysts. * * *

In developing the process which is the subject of this specification * * * it was found feasible to combine the advantages of high activity and freedom from side reactions of the reduced metals *with the long life and freedom from poisoning characteristic of oxide catalysts.* * * * [Emphasis supplied.]

It seems to us that the prior art of record, rather than leading away from the claimed subject matter as appellant contends, would suggest the process here claimed to one of ordinary skill. Certainly no reference deprecates the use of a zinc oxide catalyst with a feedstock containing impurities. While we appreciate appellant's arguments, we are not convinced the subject matter is unobvious within the meaning of the statute.

The decision is affirmed.

Affirmed.